```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                 :
BRUCE TRINER
                                 :
     v.                          : Civil Action No. DKC 2006-2003
                                 :
ORACLE USA, INC.
                                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employee benefits case are the motion of Defendant Oracle USA, Inc. to dismiss for failure to state a claim, (paper 6), and the motion of Plaintiff Bruce Triner to remand the case to the Circuit Court for Montgomery County, Maryland, (paper 9).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court will deny Plaintiff's motion to remand and will grant Defendant's motion to dismiss.

**I.  Background**

Plaintiff claims that Defendant breached a contract to pay severance benefits after Defendant merged with Plaintiff's former employer, PeopleSoft, Inc., ("PeopleSoft"), in 2005.  Plaintiff had been employed by PeopleSoft since approximately December 2001, initially as a Regional Sales Manager.  In 2004, he was offered a promotion to a position of Vice President for Federal Business at PeopleSoft, but he declined the promotion to take advantage of incentive pay in his then-current position.  He did

assume some of the duties of the Vice President position, and was promised an opportunity to transition into the Vice President position in 2005.  After the merger between Defendant and PeopleSoft was arranged, Defendant notified Plaintiff, by a letter dated January 13, 2005, that he would be offered a position with Defendant.  Plaintiff declined this offer because he concluded that the position involved less responsibility than his position with PeopleSoft.

Plaintiff's employment ended on February 18, 2005. Defendant sent Plaintiff a letter dated February 17, 2005, ("Termination Letter"), confirming the termination of his employment and indicating his eligibility for severance benefits under the PeopleSoft, Inc. Vice President Severance Benefit Plan ("Vice President Plan").  This letter included a copy of a release agreement required under the Vice President Plan, ("Release Agreement"), and a summary plan description.  The Termination Letter indicated that Plaintiff would be eligible for benefits under the Vice President Plan including payment equal to his base salary for twenty-six weeks and payment of COBRA premiums for six months.

Plaintiff executed the release agreement and Defendant ultimately paid for six months of COBRA payments, but it has not paid any cash benefit based on Plaintiff's salary.  Plaintiff filed this action in the Circuit Court for Montgomery County on

2

June 22, 2006.  Defendant removed the case to this court on August 2, 2006, asserting federal question and diversity jurisdiction.  Defendant seeks to dismiss Plaintiff's claim because the Vice President Plan requires binding arbitration of benefit eligibility disputes.  (Paper 6).  Plaintiff requests that the case be remanded to the Circuit Court for Montgomery County, arguing that he was never covered by the Vice President Plan and that his complaint asserts only a state law breach of contract claim.  (Paper 9).  The dispute centers around whether Plaintiff's state claims are preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*.

**II.  Motion to Remand**

Plaintiff's motion to remand questions this court's subject matter jurisdiction over this case and must be addressed before addressing Defendant's motion to dismiss.  *See* 14C *Wright & Miller*, *Federal Practice and Procedure*, § 3739, 423 & n.6 (citing In re *Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959)).

**A.  Standard of Review**

On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," indicative of the reluctance of federal courts "to interfere with matters properly before a state court." *Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 701-02 (D.Md.

3

1997) (internal quotation omitted); *see also Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).  The defendant must prove the existence of subject matter jurisdiction.  *See Momin v. Maggiemoo's Int'l, L.L.C.*, 205 F.Supp.2d 506, 510 (D.Md. 2002).  A defendant may rely upon "interrogatories, requests for admissions, or other written documents . . . to establish the veracity of the material allegations in its petition for removal that have been denied by the plaintiff in its motion to remand," and, if such a showing is made, no hearing is necessary.  *Wright v. Cont'l Cas. Co.*, 456 F.Supp. 1075, 1078 (M.D.Fla. 1978); *see also O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F.Supp. 1538, 1541 (S.D.Fla. 1988).

**B.  Analysis**

Plaintiff maintains that his complaint asserted only a state law cause of action that this court is without subject matter jurisdiction to hear.  Defendant contends that Plaintiff's state law cause of action is completely preempted by ERISA.  Under the well-pleaded complaint rule, "actions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question" sufficient to give a federal court subject matter jurisdiction under 28 U.S.C. § 1331.  *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006).  The doctrine of complete preemption, however, concludes that some federal laws exert a particularly strong interest that

4

"transforms a state-law claim into one arising under federal law, [and] 'the well pleaded complaint rule is satisfied' even though the complainant never intended to raise an issue of federal law." *Id.* (quoting *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005)).

State law claims that, in effect, seek to adjudicate benefits due under an employee benefit plan governed by ERISA are completely preempted by 29 U.S.C. §§ 1132, 1144. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-67 (1987); *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 290 (4th Cir.), *cert. denied*, 540 U.S. 1073 (2003). Section 1132(a)(1)(B) authorizes "a participant or beneficiary" under an ERISA plan to bring a civil action under federal law "to recover benefits due to him under the terms of his plan." Section 1144 preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. The preemption provisions of section 1144(a) "encompass[] not only statutes but also common law causes of action, such as [a] claim for breach of contract." *Gersham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005). Generally when a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption. *Id.* (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004)).

Not every breach of contract claim seeking employee benefits promised by an employer that operates an ERISA plan is preempted.

5

In *Gersham*, a contract claim was not preempted because the employee sought to enforce a contract that independently guaranteed benefits similar to but greater than those offered by an ERISA plan. *Id.* at 259.  The employer in *Gersham* offered a severance benefit under an ERISA plan, but the plaintiff's written offer of employment, which "neither referred to nor explicitly incorporated the [ERISA] Severance Plan," provided for greater severance benefits under broader circumstances than what would have been available under the ERISA plan. *Id.* at 256.

Plaintiff contends that, like the plaintiff in *Gersham*, he asserts a state law claim not preempted by ERISA.  Plaintiff's claim differs significantly from the claim for severance benefits in *Gersham*, where the offer letter neither referred to nor incorporated the plan.  Here, the Termination Letter and the Release Agreement reference the existence of an ERISA severance benefit plan.[1]  The Termination Letter, attached to Plaintiff's complaint as Exhibit A, provides that:

> Enclosed you will find a Release Agreement, along with a copy of the applicable Peoplesoft Severance Plan.  Please review these documents carefully.  Subject to the terms and conditions of the enclosed Severance Plan, you are eligible for severance pay in the amount of 26 weeks base salary plus 6 months COBRA."

---

[1] Severance benefit plans are governed by ERISA under 29 U.S.C. §§ 1003(1), 186(c)(6) and under 29 C.F.R. 2510.3-1(a)(2)-(3).  Neither party disputes that the Vice President Plan is governed by ERISA.

(Paper 2, Ex. A). The Release Agreement provided with the Termination Letter and executed by Plaintiff also references the ERISA severance benefit plan. Its first line, set in bold text, provides: "I understand and agree completely to the terms set forth in the PeopleSoft, Inc. Vice President Severance Benefit Plan (the 'Plan')." The next line continues: "I understand that this Release, together with the Plan, constitutes the complete, final, and exclusive embodiment of the entire agreement between the Company and me with regard to the subject matter hereof." *Id.* Furthermore, the contract in *Gersham* offered greater benefits than that ERISA plan, *Gersham*, 404 F.3d at 256, while in this case both the Vice President Plan and the Termination Letter provide for a severance benefit of 26 weeks base salary and 6 months of COBRA premiums. (Paper 2, Ex. A; paper 13, Ex. B app. A at 2).

Plaintiff also argues that he was not qualified to participate in the Vice President Plan that was included with the Termination Letter and referenced in the Release Agreement because he was offered a position as a Vice President for PeopleSoft, but refused the position and made alternative arrangements. (Paper 9, Ex. 1, Triner Decl. at 1-2). Defendant also offers the declaration of Darnelle Aynesworth, formerly a human resources employee of PeopleSoft and now a human resources employee of Defendant. Aynesworth stated in the Amended

7

Declaration that by November 2004, "Bruce Triner was designated by PeopleSoft to participate in the Vice President Plan as an 'other eligible employee'". (Paper 13). Plaintiff concedes that he was notified "in the fall of 2004 that a number of individuals, [him]self included, might be offered a severance package similar to those offered to executive level individuals, i.e. vice presidents . . . ." (Paper 9, Ex. 1, Triner Decl. at 3 n.2). Defendant also offers a computer printout of a form letter that Ayensworth indicates was sent to Plaintiff notifying him of his eligibility for severance benefits as an "other qualified employee" under the Vice President Plan and a printout from a spreadsheet listing the recipients of this letter, including Plaintiff. (Paper 13, Ex. C).

The Vice President Plan allows benefits only for "Eligible Employees," defined in the plan as:

> a full time regular hire employee of the Employer (i) who is based in the United States, (ii) who holds the title of a vice president . . ., (iii) whose employment is terminated by reason of his or her Involuntary Termination or Constructive Discharge, and (iv) who is notified by the Company in writing that he or she is eligible for participation in the Plan. The determination of whether an employee is an Eligible Employee shall be made by the Plan Administrator, in its sole discretion, and such determination shall be binding and conclusive on all persons.

(Paper 13, Ex. B at 1). Appendix A of the Vice President Plan, however, provides severance benefits for "Vice Presidents" as 52

8

weeks of base salary as cash severance pay plus 12 months of COBRA coverage premiums and for "Other Eligible Employees" as 26 weeks of base salary as cash severance pay and 6 months of COBRA coverage premiums.  (Paper 13, Ex. B app. A at 2).

Aynesworth's declaration and the attached documents indicate that PeopleSoft decided to make Plaintiff eligible for severance benefits under the Vice President Plan as an "other eligible employee" in 2004.  This determination is final regardless of any dispute as to whether that plan's language would otherwise include Plaintiff because PeopleSoft was the plan administrator, and, as such, its determination as to eligibility was final and binding as to all parties.[2]  (Paper 13, Ex. B at 1).

Finally, Plaintiff argues that Defendant was not the administrator of the Vice President Plan as of February 17, 2005, the date of the Termination Letter.  As a result, he contends that any contract for severance benefits created by the Termination Letter was not governed by any ERISA plan.  The Termination Letter itself explicitly references and purports to implement the Vice President Plan, providing that Plaintiff's

---

[2] PeopleSoft employees below the Vice President level not otherwise entitled to benefits under the Vice President Plan were entitled to lesser severance benefits under the same plan conditions pursuant to the PeopleSoft Employee Severance Benefit Program.  (Paper 13 at 2-3; paper 13, Ex. D).  Even if Plaintiff were covered only under this plan, his state law breach of contract claim based on the Termination Letter would be preempted because the Termination Letter and the Release Agreement both explicitly reference these plan terms and conditions.

9

eligibility for severance benefits was "subject to the terms and conditions of the enclosed Severance Plan." (Paper 2, Ex. A). The Termination Letter also included the Release Agreement, a document provided in and required by the Vice President Plan. As such, it shows that Defendant had taken over administration of the Vice President Plan as of the time the letter was written. Aynesworth confirms that Defendant became administrator of the Vice President Plan after its merger with PeopleSoft and is today the plan administrator. (Paper 13, Aynesworth Decl. at 1).

Plaintiff's state law claims attempt to collect severance benefits available to Plaintiff, if at all, only under the Vice President Plan, which is governed by ERISA. As a result, this claim is preempted by ERISA, and removal to this court was proper.

**III. Motion to Dismiss**

When a state law claim is found to be completely preempted by ERISA, the court "should not dismiss the claim as preempted, but should treat it as a federal claim under [ERISA] § 502. What was a state claim for breach of contract becomes a federal claim for the enforcement of contractual rights under [ERISA] § 502(a)(1)(B)." *Darcangelo v. Verizon Comms., Inc.*, 292 F.3d 181, 195 (4th Cir. 2002). As a result, Plaintiff's breach of contract claim will be recast as a claim for benefits due under ERISA. Defendant moves to dismiss this claim based on its contention

10

that the Vice President Plan requires arbitration of benefit eligibility disputes.

**A.   Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however,

11

accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint.  The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action."  *Abadian v. Lee*, 117 F.Supp.2d 481, 485 (D.Md. 2000) (citing *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).  When doing so, the court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleading."  See Fed.R.Civ.P. 12(b) ("If [on a 12(b)(6) motion to dismiss,] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."); *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).

**B.  Analysis**

"[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable," even though the Federal

12

Arbitration Act provides, in 9 U.S.C. § 3, only for a stay of proceedings to allow for arbitration.  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).  Defendant asserts that the Vice President Plan requires that Plaintiff's claims be arbitrated, but this conclusion rests upon consideration of the Vice President Plan, which was not attached to Plaintiff's complaint.

Without converting to a motion for summary judgment, a court may consider a document that is "integral to and explicitly relied on in the complaint" as long as the document's authenticity is not challenged.  *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see also* 5C *Wright & Miller*, *Federal Practice and Procedure*, § 1371 & nn.12-14.  The provisions of the Vice President Plan are central to Plaintiff's claim, recast as an ERISA claim under 29 U.S.C. § 1132, for severance benefits owed under that plan.  While not explicitly referenced in the complaint, the Vice President Plan is referenced in both the Termination Letter and the Release Agreement that were filed with Plaintiff's complaint.  Reference to the Vice President Plan under which benefits are sought would be central to a claim to enforce the terms of such a plan. Plaintiff does not challenge the authenticity of the copies of the Vice President Plan that have been submitted.  As a result,

13

the terms of the Vice President Plan may be considered in determining this motion to dismiss.

Section 10 of the Vice President Plan requires that claims for benefits under the plan must be settled by binding arbitration after exhaustion of the plan's appeal procedures. The Vice President Plan provides that:

> Any applicant's claim remaining unresolved after exhaustion of the procedures in Section 9 (and to the extent permitted by law, any dispute concerning breach or claimed breach of duty regarding the Plan) shall be settled solely by binding arbitration at the Plan Administrator's principal place of business at the time of the arbitration, in accordance with the Employment Claims Rules of the American Arbitration Association. . . .
> Except as otherwise specifically provided in this Plan, the provisions of this Section 10 shall be absolutely exclusive for any and all purposes and fully applicable to each and every dispute regarding the Plan, including any claim which, if pursued through any state or federal court or administrative proceeding, would arise at law, in equity or pursuant to statutory, regulatory or common law rules, regardless of whether such claim would arise in contract, tort or under any other legal or equitable theory or basis. . . .

(Paper 13, Ex. B at 10-11).  Plaintiff acknowledged and agreed to the Vice President Plan's terms by executing the Release Agreement, which he attached to the complaint.  (Paper 2, Ex. B). Plaintiff's claim must be decided by arbitration pursuant to the terms of the Vice President Plan. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1115 (3d Cir. 1993)

14

(requiring arbitration of ERISA claims pursuant to arbitration agreement); *see also Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80 (4th Cir. 1989) (dismissing plan beneficiary's claim for failure to exhaust ERISA plan's administrative grievance procedures before bringing suit).  Dismissal is appropriate because all issues raised by Plaintiff's claim for benefits under the Vice President Plan are subject to that plan's arbitration requirement.  *Choice Hotels, Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d at 709-10.

**IV. Conclusion**

For the foregoing reasons Plaintiff's motion to remand will be denied.  Defendant's motion to dismiss for failure to state a claim will be granted, and this case will be dismissed without prejudice to Plaintiff's ability to bring any appropriate arbitration claim under the terms of the Vice President Plan.  A separate Order will follow.

                                                                                                                                           /s/
                                          DEBORAH K. CHASANOW
                                        United States District Judge